UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRYAN DARRELL WALKER,

        Petitioner,                      Case Number: 2:10-12413

v.                                          HONORABLE DENISE PAGE HOOD

CINDI CURTIN,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

This is a habeas corpus case filed under 28 U.S.C. § 2254. Petitioner Bryan Darrell Walker, a state inmate incarcerated at the Oaks Correctional Facility in Manistee, Michigan, challenges his conviction for second-degree murder. He seeks habeas relief on the grounds that he was denied his right to counsel and right to present a defense when he was denied his request for a forensics examination, insufficient evidence was presented, and he received ineffective assistance of trial counsel. The Court finds the claims meritless and, accordingly, denies the petition.

### I. Facts

Petitioner's conviction arises from the stabbing death of Latisa Hayes in 2005. Petitioner was prosecuted for the crime in 2008. The Michigan Court of Appeals summarized the testimony adduced at trial as follows:

This case involves the murder of Latisa Hayes, who died as the result of

multiple stab wounds. Forensics evidence linked Walker to Hayes. However, the most compelling evidence linking Walker to the murder was the testimony of Angela Carr. Carr reported getting into a car in which Walker and Vaughnisha Reed were arguing. She said that Hayes was in the backseat, but Hayes did not speak to Carr, was sitting with her hands clenched at her face, and did not make any movement. Hayes did not move or say anything as Walker moved her forward, put a leather coat on her, placed her arms in each sleeve, and leaned her back. Hayes eyes were slightly hallway open. Carr claimed that Walker warned her not to speak of what she saw and that she then got out of her car and proceeded to a drug house. Carr asserted that Walker came to the house several hours later and again threatened her. She testified that Walker said, "I did what I had to do, I killed Latisa." In a recorded statement played for the jury, Walker apparently said that he was present but that another person stabbed Hayes.

*People v. Walker*, No. 289362, 2010 WL 143485, * 1 (Mich. Ct. App. Jan. 14, 2010).

## II. Procedural History

Petitioner was convicted by a jury in Wayne County Circuit Court of second-degree murder. He was sentenced on November 11, 2008, as a fourth habitual offender to 30 to 50 hears in prison.

Petitioner filed an appeal of right in the Michigan Court of Appeals. He raised these claims:

> I.   The trial court committed reversible error in denying defense counsel's request for a forensic examination and making its own determination that Mr. Walker was competent to stand trial thereby depriving Mr. Walker of his constitutional right to counsel and his right to present a defense to the charges contained in the criminal information.
>
> II.  The prosecution failed to offer sufficient evidence of Mr. Walker's guilt beyond a reasonable doubt for the offense of second-degree murder thereby depriving him of his constitutional right to due process of law.
>
> III. Mr. Walker was denied his constitutional right to due process of law due to the ineffectiveness of his trial counsel for not utilizing the preliminary exam

>testimony of Angela Carr to impeach her credibility in a case where the only evidence against Mr. Walker was the credibility of Angela Carr.

The Michigan Court of Appeals affirmed the conviction. *People v. Walker,* No. 289362*,* 2010 WL 143485 (Mich. Ct. App. Jan. 14, 2010). Petitioner sought leave to appeal in the Michigan Supreme Court, raising the same claims raised in the Michigan Court of Appeals and a claim that the Michigan Court of Appeals based its opinion on incorrect facts. The Michigan Supreme Court denied leave to appeal. *People v. Walker*, 486 Mich. 930 (Mich. May 25, 2010).

Petitioner then filed this habeas petition. He raises the same claims raised in the Michigan Court of Appeals.

### III. Standard

The petitioner's claims are reviewed against the standards established by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA provides:

>An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

3

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (*quoting Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (*quoting Williams*, 529 U.S. at 413). However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 789 (2011), *quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented

in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams,* 529 U.S. at 412. Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), *citing Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

A federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

### IV.  Discussion

#### A.  Denial of Request for Competency Evaluation

Petitioner argues that the trial court improperly determined that he was competent to stand trial and violated his rights by reaching this determination without ordering a competency evaluation.

The Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial. *Medina v. California*, 505 U.S. 437, 439 (1992); *see also Pate v. Robinson*, 383 U.S. 375, 378 (1966). The standard governing competency to stand trial is: "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960). If, at any point, "before or during trial 'sufficient doubt' arises about a defendant's competence – 'the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense' – the trial court should order a competency hearing." *Cowans v. Bagley*, 639 F.3d 241, 247 (6th Cir. 2011), *quoting Drope v. Missouri*, 420 U.S. 162, 180 (1975). A state court's "determination of competence is a factual finding, to which deference must be paid." *Filiaggi v. Bagley*, 445 F.3d 851, 858 (6th Cir.2006) (citing *Thompson v. Keohane*, 516 U.S. 99, 110–11 (1995)). The test for whether a trial court erred in not holding a proper hearing is whether a reasonable judge in that position would have "experienced doubt with respect to competency to stand trial." *Id.* (6th Cir. 2006).

In this case, defense counsel informed the Court that he found it impossible to

communicate with Petitioner, who refused to discuss the case in a rational manner because he believed counsel was cooperating with the prosecutor. The trial court denied defense counsel's request for a competency evaluation, holding that Petitioner was competent to stand trial.

There are "no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed," *Drope v. Missouri*, 420 U.S. 162, 180 (1975), "evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required." *Id.* These "open-ended standards" and "high threshold" for establishing incompetence allow state courts "wide latitude" in determining whether to hold a competency hearing. *Cowans*, 639 F.3d at 247. "When assessing whether a state court's application of federal law is unreasonable, 'the range of reasonable professional judgment can depend in part on the nature of the relevant rule' that the state court must apply." *Renico v. Lett*, __ U.S. __, 130 S. Ct. 1855, 1864 (2010) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "[T]he more general the rule' at issue . . . 'the more leeway state courts have in reaching outcomes in case-by-case determinations.'" *Id.* (quoting *Yarborough*, 541 U.S. at 664). Because the standard for competence is a general one, the state courts must be granted considerable leeway in its application.

In this case, the Michigan Court of Appeals held that the record did not support Petitioner's argument that a competency hearing should have been held. Other than defense counsel's representations, Petitioner presented no support for his request. The

Michigan Court of Appeals held that the evidence adduced by the trial court in its colloquy with Petitioner showed that Petitioner understood the charge against him and the gravity of that charge and that he could assist in his own defense. To rebut the state court's finding of competence, Petitioner must present "clear and convincing evidence" of incompetence. *Woodley v. Bradshaw*, 451 F. App'x 529, 538 (6th Cir. 2011) (citing 28 U.S.C. § 2254(e)(1)).

The trial proceedings support the state court's decision that Petitioner was competent to stand trial. Petitioner had never been under the care of a psychiatrist, he was responsive to the trial court's questions, and he showed an appreciation for the seriousness of the charge against him. The only evidence offered by Petitioner to support a finding of incompetence was that he expressed suspicion that defense counsel was conspiring with the prosecutor. Defense counsel stated that Petitioner, therefore, was unwilling to communicate with him. Counsel negotiated a plea pursuant to which Petitioner would plead guilty to manslaughter, be sentenced to ten to fifteen years in prison, and the habitual offender enhancement would be withdrawn. Ultimately, the plea was not accepted by the Court because Petitioner refused to admit his guilt. Throughout this hearing and other court appearances, Petitioner demonstrated an ability to understand the charge, its implications, and to measure the consequences of refusing the plea offer. Petitioner simply fails to present any evidence to rebut the state court's finding of competence or to show that, under these circumstances, a reasonable judge would have held a hearing. The state court's finding of competency was not an unreasonable

determination of the facts on the evidence presented at the state court hearings, nor was it rebutted by clear and convincing evidence.

In addition, Petitioner has not shown that the trial court's refusal to hold a competency hearing denied him his right to counsel or his right to present a defense. Petitioner was represented by counsel at all stages of the criminal process and does not articulate how the trial court's ruling regarding a competency hearing would have served to deny him his right to counsel. Further, he fails to articulate the basis for the argument that the ruling violated his right to present a defense and the Court finds no basis for this argument. Habeas relief is denied.

## B. Sufficiency of the Evidence

Petitioner argues for habeas relief on the ground that the prosecutor offered insufficient evidence to support his conviction for second-degree murder.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). On direct review, a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir.

2006) (quoting *Jackson*, 443 U.S. at 324 n.16).

"Two layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v. Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009)). First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205, (citing *Jackson,* 443 U.S. at 319). Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*

Under Michigan law, the elements of second-degree murder are: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse. *People v. Goecke*, 579 N.W.2d 868, 878 (Mich. 1998). The malice element is satisfied "by showing that the defendant possessed the intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with the knowledge that death or great bodily harm would be the probable result. . . . Malice can be inferred from evidence that a defendant intentionally set in motion a force likely to cause death or great bodily harm." *People v. Djordjevic*, 584 N.W.2d 610, 612 (Mich. Ct. App. 1998) (internal citation omitted).

The Michigan Court of Appeal concluded that, were Angela Carr's testimony believed by the jury, sufficient evidence was presented to support Petitioner's conviction

beyond a reasonable doubt. Carr testified that she saw Hayes at approximately midnight on the day Hayes was murdered. Both women were on their way to a gas station to buy drugs. Carr saw Hayes the next morning at approximately 7:00 a.m., in Petitioner's vehicle. Carr sat in the backseat next to Hayes, who, Carr testified, did not acknowledge Carr and sat rigidly the entire time Carr was in the vehicle. Hayes had no apparent injuries and Carr observed no evidence of blood on Hayes. Carr noticed a knife on the seat between Petitioner and a woman known to Carr as Diamond. Carr became nervous and exited the vehicle. Carr saw Petitioner two hours later at a drug house. He appeared nervous and panicky. He placed something overhead in the kitchen duct work, though she could not see what it was. Petitioner then threatened Carr to tell no one what she had heard or seen. Carr also testified that Petitioner told her he killed Hayes.

"A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003), (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). "A reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *McDaniel v. Brown*, __ U.S. __, 130 S. Ct. 665, 674 (2010), (quoting *Jackson*, 443 U.S. at 326). According the state court's findings of fact a presumption of correctness and considering all the evidence in a light most favorable to the prosecution (including Carr's credibility), this Court concludes that the Michigan

11

Court of Appeals' decision that sufficient evidence was presented for a finding of guilty of second-degree murder did not "result[] in a decision that . . . involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Petitioner is not entitled to federal habeas corpus relief with respect to this claim.

### C. Trial Counsel's Representation

Finally, Petitioner argues that counsel was ineffective. Specifically, he argues that counsel was ineffective in failing to: secure an independent competency evaluation, file a motion to quash the indictment, present an alibi defense, and impeach Angela Carr with her preliminary examination testimony.[1]

The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The defendant must show "that counsel made

---

[1] The only ineffective assistance of counsel claim raised by Petitioner on direct appeal was that related to Angela Carr's testimony. The remaining ineffective assistance of counsel claims have not been raised in state court. The Court nevertheless addresses the merits of those claims because the Court may deny an unexhausted claim on the merits where the unexhausted claim is plainly meritless, not cognizable on federal habeas review, or doing so is in the best interests of the parties and judicial economy. *Granberry v. Greer*, 481 U.S. 129, 131 (1987).

errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

"Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, __ U.S. __, 130 S. Ct. 1473, 1485 (2010).

> [T]he *Strickland* standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S. at 689-90. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the

> judge. . . . The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom.  *Strickland*, 466 U.S. at 690.

*Richter*, __ U.S. __, 131 S. Ct. at 788.

First, Petitioner argues that counsel was ineffective in failing to secure an independent competency evaluation. Defense counsel's motion for a competency hearing was denied by the trial court. Petitioner has not shown that counsel acting within the wide range of professionally competent assistance would have secured an independent competency evaluation. Other than defense counsel's representation that Petitioner was suspicious of him and feared defense counsel was in cahoots with the prosecution, Petitioner presents no other evidence to support his argument that counsel should have obtained an independent competency evaluation. Additionally, Petitioner fails to show that he was prejudiced by counsel's failure to secure an independent competency evaluation. He presents no evidence to suggest that he lacked capacity to proceed to trial. Petitioner has failed to show a reasonable probability that, but for counsel's failure to secure an independent expert, the result of the proceeding would have been different.

Second, Petitioner argues that counsel was ineffective in failing to file a motion to quash the indictment. At the preliminary examination, Angela Carr testified that, on the day Latisa Hayes was killed, she rode in Petitioner's car with Hayes. Hayes observed a knife on the seat next to Petitioner. Approximately one or two hours later, Petitioner told Carr that he had killed Latisa. Based upon this testimony, it was not unreasonable for

counsel to decline to file a motion to quash. Further, Petitioner has not shown a reasonable probability that a motion to quash the indictment would have been successful.

Third, Petitioner argues that counsel was ineffective in failing to present an alibi defense. He argues that, on the night of the murder, he was working as a doorman at the drug house frequented by Angela Carr and that over fifty people could have verified that he was there. Petitioner, however, fails to identify by name a single person who could have testified as an alibi witness. He produces no evidence that alibi witnesses were able or willing to testify at trial. In short, his claim amounts to nothing more than conclusory allegations which fall far short of showing counsel was inadequate or that Petitioner was prejudiced by the failure to call alibi witnesses. *See Cross v. Stovall*, 238 F. App'x 32, 39 (6th Cir. 2007) (holding that conclusory assertions of prejudice are insufficient to satisfy *Strickland's* second prong). Petitioner's conclusory allegations fail to show ineffective assistance.

Finally, Petitioner claims that counsel should have impeached Angela Carr with her preliminary examination testimony. The Michigan Court of Appeals denied this claim, stating, in relevant part:

> At trial, Carr acknowledged that she gave numerous untruthful statements to the police shortly after the crime in 2005 and when the investigation was reopened in 2008. She said that she was scared because she had been threatened and because she thought she could get the same amount of time in prison as Walker. Carr said that she ultimately came forward because it was the right thing to do. She also said that she was a drug abuser in 2005, but stopped using drugs in 2007 when she became pregnant.
>
> On cross-examination, Carr admitted that she sometimes has a reason to lie

and that one reason might be that she did not want to get prosecuted for a crime. She acknowledged her previous lies. Defense counsel implied that she would have more reason to lie now because she had a baby. Defense counsel then brought out inconsistencies in Carr's story regarding whether she thought Hayes was dead or alive when Carr saw her in the car. Defense counsel had Carr confirm that Walker's alleged statement regarding having killed Hayes was made at the drug house and then inquired whether she had told police that the statement occurred in the car. She then said it was said in both places. Finally, defense counsel inquired whether it was hard to tell a lie the same way twice, and Carr said no. When he asked if it was easy, she said, "I don't remember."

Walker asserts that Carr's credibility would have been further called into question if his defense counsel had impeached Carr with her preliminary examination testimony. According to Walker, there were inconsistencies between her trial testimony and her preliminary examination testimony regarding Walker's threats to her, Walker and Reed's argument in the car, Walker's placement of an object that he hid at the drug house, and her reasons for talking to the police.

Of the matters cited, we find that the only matter that demonstrated a clear contradiction was the testimony regarding Walker's placement of an object that he hid at the drug house. At trial, Carr said that Walker stashed something in a compartment over his head, but at the preliminary examination, Carr said that Walker stashed something in a floor duct shaft. Even if this were indicative of a lack of credibility, it would not have added anything substantial to the impeachment of Carr. Defense counsel may have determined that he effectively impeached Carr in his cross-examination, and that a foray into these matters, which Carr might have explained, would not be beneficial. We decline to second-guess this apparent strategy.

*Walker*, 2010 WL 143485, *3.

Counsel comprehensively cross-examined Carr. He comprehensively explored her failure to come forward when the murder occurred and her several inconsistent prior statements. He questioned her motives in coming forward when she did. It is improbable that, had counsel attempted to further impeach Carr's credibility through introduction of

16

her prior testimony, the result of the proceeding would have been different. The Michigan Court of Appeals' decision that counsel was not ineffective was not contrary to, nor did it involve an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Habeas relief is denied on this claim.

### V. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted).

The Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted. The Court declines to issue a certificate of appealability.

### VI. Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

It is **FURTHER ORDERED** that the Court declines to issue a certificate of appealability.

It is **FURTHER ORDERED** that the Motion for Evidentiary Hearing and Motion for Discovery (Doc. No. 16, 4/22/2012) is **DENIED** as MOOT.

It is **FURTHER ORDERED** that the Motion for Leave to Amend His Reply to Respondent's Answer to Habeas Corpus (Doc. No. 17, 4/26/2012) is **GRANTED.**

        S/Denise Page Hood
        Denise Page Hood
        United States District Judge

Dated: April 30, 2012

I hereby certify that a copy of the foregoing document was served upon Bryan Walker #166838, 1500 Caberfae Highway, Manistee, MI 49660 and counsel of record on April 30, 2012, by electronic and/or ordinary mail.

        S/LaShawn R. Saulsberry
        Case Manager